```
┌─────────────────────────────────────────────────┐
│         DISTRICT COURT OF THE VIRGIN ISLANDS    │
│         DIVISION OF ST. THOMAS AND ST. JOHN     │
│                 APPELLATE DIVISION              │
└─────────────────────────────────────────────────┘
```

EARL VANTERPOOL                )
                               ) D.C. Crim. App. No. 2005-65
    Appellant,             )
                               ) Super. Ct. Crim. No. ST-05-CR-28
v.                             )
                               )
PEOPLE OF THE VIRGIN ISLANDS   )
                               )
    Appellee.              )
_____)

On Appeal from the Superior Court of the Virgin Islands,
the Honorable Brenda J. Hollar presiding.

Considered: March 5, 2010
Filed: October 30, 2013

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the Virgin Islands; and **RAYMOND FINCH**, Judge of the District Court of the Virgin Islands.[1]

ATTORNEYS:

Kyle R. Waldner, Esq.
St. Thomas, VI
    *For the Appellant.*

Terrylyn Smock, AAG
St. Thomas, VI
    *For the Appellee.*

---

[1] While Judge Julio A. Brady, Judge of the Superior Court, Division of St. Croix, sat on the panel that considered this matter, he retired before the decision was issued.

Vanterpool v. People of the Virgin Islands
Crim. App. No. 2005-65
Memorandum Opinion
Page 2

## MEMORANDUM OPINION

**PER CURIAM,**

Earl Vanterpool ("Vanterpool") appeals his convictions in the Superior Court[2] of four counts of harassment by telephone, telegraph, or written communication, in connection with an act of domestic violence. For the reasons stated below, the Court will affirm the convictions.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Earl Vanterpool was in a romantic relationship with a woman named Jacqueline Webster ("Webster"). In May of 2004, Webster expressed a desire to end their relationship because Vanterpool was becoming possessive and was calling her frequently. However, Webster and Vanterpool continued to have contact for a period of time. Webster asserted that their relationship did not officially end until November of 2004.

After the termination of their relationship, Vanterpool continued making numerous calls to Webster's cell phone and home phone. He also began sending her faxes. Webster told him that she

---

[2] Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. See Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 3

wanted him to cease calling and communicating with her.

Following her unsuccessful attempts to discourage Vanterpool's communications, Webster went to the police station to a file a report. At the police station, Webster was assisted by Sergeant Boynes of the Virgin Islands Police Department. While speaking with Boynes, Webster received multiple phone calls from Vanterpool. During one such call, Webster handed the phone to Sergeant Boynes. Boynes told Vanterpool that he was not supposed to be calling Webster and that if he continued to call her he would be arrested.

Despite Sergeant Boynes' warning, Vanterpool continued his attempts to contact Webster via phone and fax.

Thereafter, the Government charged Vaterpool in a four-count complaint with: (i) one count of harassment by telephone occurring on or about January 6, 2005, in violation of V.I. CODE ANN. tit. 14, § 706(1) and V.I. CODE ANN. tit. 16 § 91(b)(10); (ii) one count of harassment by telephone occurring on or about December 21, 2004, in violation of V.I. CODE ANN. tit. 14, § 706(1) and V.I. CODE ANN. tit. 16 § 91(b)(10); (iii) one count of harassment by written communication occurring on or about January 6, 2006, in violation of V.I. CODE ANN. tit. 14, § 706(1) and V.I. CODE ANN. tit. 16 § 91(b)(10); and (iv) one count of harassment by written communication on or about December 21,

Vanterpool v. People of the Virgin Islands
Crim. App. No. 2005-65
Memorandum Opinion
Page 4

2004, in violation of V.I. CODE ANN. tit. 14, § 706(1) and V.I. CODE ANN. tit. 16 § 91(b)(10).

Thereafter, Webster and Vanterpool testified at the bench trial. The Court adjudged Vanterpool guilty on all four counts. Vanterpool timely filed this appeal.

On appeal, Vanterpool raises three main arguments: (1) that the Government failed to adduce evidence that he possessed the requisite intent to harass, required by 14 V.I.C. § 706(1); (2) that 14 V.I.C. § 706(1) is unconstitutional because it is vague and overbroad; and (3) that he was provided ineffective assistance of counsel because his counsel failed to make a motion for judgment of acquittal at trial and failed to raise constitutional challenges to 14 V.I.C. § 706(1).

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction to review judgments and orders of the Superior Court in criminal cases. *See* Revised Organic Act § 23A, 48 U.S.C. § 1613a; Act No. 6687 § 4 (2004).

### B. Standard of Review

#### 1. Sufficiency of the Evidence

An appellate court exercises plenary review over sufficiency of the evidence claims. *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008). "'In exercising that review, we must interpret

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 5

the evidence in the light most favorable to the government as the verdict winner,' [citation] and 'do not weigh evidence or determine the credibility of witnesses in making [our] determination.'" *Id.* (second alteration in original) (quoting *United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998); *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)). That is, the verdict must stand if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . ." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). Overall, "a claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (internal quotation marks and citation omitted).

### 2. Constitutionality of a Statute

Vanterpool failed to raise his constitutional challenges to 14 V.I.C. § 706(1) at trial. Because he is raising his constitutional challenges for the first time on appeal, the plain error standard governs. *United States v. Cotton*, 535 U.S. 625, 51 (2002)(citing *United States v. Olano*, 507 U.S. 725 (1993)). "Under that test before an appellate court can correct an error not raised at trial there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v.*

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 6

*United States*, 520 U.S. 461, 466-67 (1997).

### 3. Ineffective Assistance of Counsel

To prevail on an claim of ineffective assistance of counsel, a defendant must show both deficiency in performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 700 (1984). "The 'deficiency' step asks whether counsel's conduct 'fell below an objective standard of reasonableness' viewed as of the time it occurred." *United States v. Baird*, 218 F.3d 221, 226 (3d Cir. 2000) (quoting *Strickland*, 466 U.S. at 688, 690; citing *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)). "The 'prejudice' prerequisite asks whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694; citing *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991)).

### III. ANALYSIS

#### 1. Sufficiency of the Evidence

Vanterpool argues that the evidence adduced at trial was insufficient to prove that he committed the four counts of harassment by telephone or writing in violation of 14 V.I.C. § 706(1) on the dates charged. 14 V.I.C. § 706(1) punishes:

Whoever, with intent to harass or alarm another person-

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 7

>  (1) communicates with a person, anonymously or otherwise, by telephone, or by telegraph, mail or any other form of written communication, in a manner likely to harass or alarm . . . .

14 V.I.C. § 706(1).

Vanterpool contends that there was insufficient evidence to establish that he possessed the requisite intent to harass or alarm another when communicating with Webster. Black's Law Dictionary defines harassment as "[w]ords, conduct or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose." BLACK'S LAW DICTIONARY (8th ed. 2004).

The Government charged Vanterpool with communications made on December 21, 2004, and January 6, 2005. He asserts that during the December 2004-January 2005 period, Webster herself initiated some communications with Vanterpool. Vanterpool attempts to argue that his communications with Webster were legitimate, and part of a continuing non-harassing communicative relationship. He testified that he became sick in November of 2004, and that Webster brought food and medication for him. He further testified that Webster made a number of calls to him during late 2004 and early 2005, to inquire about his health issues.

Though there may have been some contact between Vanterpool

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 8

and Webster that was agreeable, a few instances of such contact do not immunize Vanterpool's conduct from being deemed harassment. Intent may be inferred from the facts and circumstances of an individual's behavior. *See Gov't of the V.I. v. Frett* ("Ordinarily intent is a question of fact. It may be inferred from the facts and circumstances surrounding the act, the situation of the parties, the nature and extent of the violence, the acts and declarations of the parties at the time, and the objects to be accomplished."); *see also Joseph v. Gov't of the V.I.*, 50 V.I. 530, 538 (D.V.I. 2008)(noting that the commission of violent acts may be used as evidence of an intent to commit battery).

In the months preceding the period when Vanterpool made the calls for which he was charged, the content of some of his calls to Webster could hardly be described as innocuous. Indeed, Webster testified that she would receive unsettling calls from Vanterpool that he was watching her:

> Q: How would you know he was following you?
> A: I would get in my car, and I would get a call on my cell phone.
> Q: Who would be on the cell phone?
> A: He would be on the cell phone.
> Q: Who is he?
> A: Mr. Vanterpool. He would say, look in your rearview mirror. Most of the time it was at night, because I work late hours, and that's what he would do, he would say look in your rearview mirror.

(J.A. 26-27).

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 9

    Additionally, the frequency of Vanterpool's telephone calls are suggestive of harassment. Webster testified about Vanterpool's numerous phone calls both to her cell phone and home phone:

> Q: Now, what happened in November when you said it officially ended.
> A: In November, when I told him it officially ended, what he did was he started faxing.
> Q: Now, you said he started faxing, what did he do before the faxes?
> A: Before the faxes he was calling me on my cell phone constantly, constantly. I had the cell phone number changed.
> Q: When you say "constantly", how many times did you receive calls from him?
> A: It was, it was six, seven times within an hour.
>
> . . .
>
> A: And he was constantly calling. After that point in time he was constantly calling . . . It was really disturbing because I would constantly hang the phone up. And sometimes I wouldn't even answer the phone.
> Q: Where else was he calling other than your cell phone?
> A: He was calling my house.
> Q: How many times he would call the house?
> A: He would call the house four, five times a day.
> Q: In addition to the ten calls?
> A: Yes, in addition.

(J.A. 27-28).

    Vanterpool's harassing intent may also be inferred from his failure to abandon his attempts to communicate with Webster in the face of demands from Webster, Webster's mother, and Sergeant Boynes to cease contacting Webster. Therefore, we find that a reasonable trier of fact could have found from the testimony at

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 10

trial that Vanterpool possessed the requisite intent to harass Webster.

### 2. Constitutionality of 14 V.I.C. § 706

Vanterpool challenges § 706(1) as unconstitutional, arguing that (1) it is overbroad because it punishes constitutionally protected speech and (2) it is vague both facially and as applied to him.

A statute is unconstitutionally overbroad if it "does not aim specifically at the evils within the allowable area of control by the government, but . . . sweeps within its ambit other constitutionally protected activities." *Waterman v. Farmer*, 183 F.3d 208, 212 n.5 (3d Cir. 1999) (internal quotations omitted). Typically, a Court will not engage in an analysis of the overbreadth of a statute independent of its application to a particular situation. *See Dejohn v. Temple Univ.*, 537 F.3d 301, 315 (3d Cir. 2008). "But cases involving freedom of speech are frequently excepted from this general rule." *Id.*

In *United States v. Bowker*, the Sixth Circuit addressed an overbreadth attack of 47 U.S.C. § 223(a)(1)(C) ("Section 223(a)(1)(C)"), a federal statute that criminalizes anonymously making "annoying, abusive, harassing, or threatening" interstate telephone calls. 47 U.S.C. § 223(a)(1)(C). The *Bowker* Court

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 11

determined that the telephone harassment statute was not overbroad because "the thrust of the statute is to prohibit communications intended to instill fear in the victim, not to provoke a discussion about the political issues of the day." *United States v. Bowker,* 372 F.3d 365, 379 (6th Cir. 2004), *overruled on other grounds,* 125 Fed. Appx. 701 (6th Cir. 2005). 14 V.I.C. § 706 does not strike at legitimate discussion but instead is narrowly aimed at prohibiting communications that alarm or harass a victim. *Cf. United States v. Lampley,* 573 F.2d 783, 787 (3d Cir. 1978)(holding that in establishing the federal telephone harassment statute, "Congress had a compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone not to communicate, but for other unjustifiable motives")(citations omitted). Accordingly, 14 V.I.C. § 706 is facially valid.

Furthermore, there was no plain error in convicting Vanterpool under 14 V.I.C. § 706, because the statute was constitutional as applied to him. Vanterpool was charged in connection with faxes and phone calls to Webster even after been told by Webster and by Sergeant Boynes that his communications were unwanted. Given the pattern of frequent calls and faxes in December of 2004 until January of 2005, we find that Vanterpool's continued communications, after being beseeched to stop,

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 12

constituted harassing speech. Punishing this type of speech did not infringe on constitutionally protected speech rights in light of the Territory's compelling interest to protect individuals from fear and harassment by persons who use the telephone not as a means to harass. *Cf. Lampley*, 573 F.2d at 787 ("Congress had a compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone not to communicate, but for other unjustifiable motives").

A statute is unconstitutionally vague when "men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 265 (1997). The Supreme Court has noted that a specific intent requirement for an offense helps combat potential vagueness concerns. *See Screws v. United States*, 325 U.S. 91 (1945).

> [T]he Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid . . . [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.

*Screws*, 325 U.S. at 101-02.

In *United States v. Lampley* 573 F.2d 784 (3d Cir. 1978), the Third Circuit addressed a vagueness challenge to

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 13

Section 223(a)(1)(C), the federal statute prohibiting anonymous threatening interstate calls. The Third Circuit held that the appellant could not claim vagueness because the statute "precisely specifies that the actor must intend to perform the acts of harassment in order to be culpable." *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978). Here, we find that the requirement in 14 V.I.C. § 706 that an offender have the specific intent to alarm or harass another, similarly makes the activities which the statute prohibits plain and removes any need for men of ordinary intelligence to guess at its meaning.

We find that 14 V.I.C. § 706 is not constitutionally infirm. Accordingly, we find no plain error rooted in constitutional law in the trial court's allowance of Vanterpool's convictions pursuant to that statute to stand.

### 3. Ineffective Assistance of Counsel

Vanterpool argues that he was denied his Sixth Amendment right to effective assistance of counsel, pursuant to the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the Sixth Amendment, criminal defendants have the right to effective assistance of counsel. Generally, ineffective assistance of counsel claims are limited to collateral review. *United States v. Gambino*, 788 F.2d 938, 950 (3d Cir. 1986). We

*Vanterpool v. People of the Virgin Islands*
Crim. App. No. 2005-65
Memorandum Opinion
Page 14

will consider ineffective assistance of counsel claims on direct appeal only if the trial record clearly reflects the grounds therefor. *Id.* Only where the record is sufficient to establish ineffective assistance of counsel without an evidentiary hearing may we decide such claims. *United States v. McLaughlin,* 386 F.3d 547, 556 (3d Cir. 2004).

Vanterpool contends that his counsel failed to adequately represent him because (1) he failed to make a Rule 29 motion despite the lack of sufficient evidence to prove beyond a reasonable doubt that Vanterpool harassed Webster under § 706(1) and (2) because he failed to challenge the constitutionality of § 706(1). However, Vanterpool's claims are not cognizable on direct appeal, as the record precludes a comprehensive inquiry into the strategy and tactics behind counsel's decisions not to file the motions. *See id.* ("Where a claim of ineffective assistance of counsel is based on attorney incompetence, the lack of a fully developed record often precludes a comprehensive inquiry into the elements of strategy or tactics that may have entered into defense counsel's challenged decision.").

## IV. CONCLUSION

For the reasons stated above, the Court will affirm Vanterpool's convictions. An appropriate judgment accompanies this opinion.